IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.  21-CR-10068-03-JWB |
| ) | |
| DILLON E. EVERMAN, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**DEFENDANT DILLON EVERMAN'S RESTITUTION MEMORANDUM**

The defendant, Dillon E. Everman, by and through his attorney, Paul S. McCausland, pursuant to 18 U.S.C. § 2259, submits this memorandum to the Court for consideration at the restitution hearing scheduled on January 5, 2023. The defendant received the government's restitution memorandum today at 4:43 p.m. Mr. Everman does not agree that he should be jointly and severally liable for $274,429.00 in restitution to Minor Victim 1, with the defendants Dustin Strom and Thommie-Lyn Stansky.

**Background.**

The defendant, pursuant to a plea agreement, agreed to pay restitution to Minor Victim # 1 ("MW#1"). (Doc. 81). The plea agreement provides for restitution pursuant to 18 U.S.C. § 2259. MV#1 was born in September 2016. The offense conduct took place in July and August 2021. The victim suffered harm and has received therapy caused by the harm. Further, the victim's care giver has incurred expenses for necessary transportation, temporary housing, and child care expenses for MV#1. Mr. Everman does not oppose those claims. His concerns are about the

claim for a lifetime of care. His objections in that regard are set forth below.

The statute provides:

(2) Restitution for trafficking in child pornography.--If the defendant was convicted of trafficking in child pornography, the court shall order restitution under this section in an amount to be determined by the court as follows:

> (A) Determining the full amount of a victim's losses.--The court shall determine the full amount of the victim's losses that were incurred or are reasonably projected to be incurred by the victim as a result of the trafficking in child pornography depicting the victim.
>
> (B) Determining a restitution amount.--After completing the determination required under subparagraph (A), the court shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000.
>
> (C) Termination of payment.--A victim's total aggregate recovery pursuant to this section shall not exceed the full amount of the victim's demonstrated losses. After the victim has received restitution in the full amount of the victim's losses as measured by the greatest amount of such losses found in any case involving that victim that has resulted in a final restitution order under this section, the liability of each defendant who is or has been ordered to pay restitution for such losses to that victim shall be terminated. The court may require the victim to provide information concerning the amount of restitution the victim has been paid in other cases for the same losses.

18 U.S.C. § 2259.

The statute defines the losses covered:

> (c)(2) Full amount of the victim's losses.--For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, and in the case of trafficking in child pornography offenses, as a proximate result of all trafficking in child pornography offenses involving the same victim, including–

2

>   (A) medical services relating to physical, psychiatric, or psychological care;
>
>   (B) physical and occupational therapy or rehabilitation;
>
>   (C) necessary transportation, temporary housing, and child care expenses;
>
>   (D) lost income;
>
>   (E) reasonable attorneys' fees, as well as other costs incurred; and
>
>   (F) any other relevant losses incurred by the victim.

18 U.S.C.A. § 2259(c).

**Calculating the amount of Restitution.**

"A district court abuses its discretion if it orders a restitution amount based on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *United States v. Anthony*, 942 F.3d 955 (10th Cir. 2019) ("*Anthony I*"). A district court may order restitution "only for losses actually resulting from the offense of conviction." *Id.*; see *United States v. Quarrell*, 310 F.3d 664, 680 (10th Cir. 2002) ("A restitution order must be based on actual loss."). The Government must prove those losses by a preponderance of the evidence. See *United States v. Wells*, 873 F.3d 1241, 1265 (10th Cir. 2017); see also 18 U.S.C. § 3664(e). It must also prove the amount of loss by a preponderance. *United States v. Galloway*, 509 F.3d 1246, 1253 (10th Cir. 2007). But "[t]he court need not calculate the harms with 'exact precision.'" *Anthony I*, 942 F.3d at 970 (quoting *United States v. Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015)).

3

*Anthony I* concerned restitution under 18 U.S.C. § 1593, The Trafficking Victims Protection Reauthorization Act (the "TVPRA"). In this case, the minor victim seeks restitution under 18 U.S.C. § 2259, the Mandatory Restitution for Sexual Exploitation of Children Act (the "MRSECA"). Both acts use the same definitions—the "full amount of the victim's losses" "includes any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim. *United States v. Anthony ("Anthony II")*, 22 F.4th 943, 946 (10th Cir. 2022)

In *Anthony I*, the Tenth Circuit vacated the district court's restitution order as to victim "R.W." Recognizing that "[r]estitution may be ordered only for losses actually resulting from the offense of conviction," the court held that the TVPRA "limit[s] restitution to losses that the defendant's conduct has directly and proximately caused." *Anthony I*, 942 F.3d at 964, 966. The Circuit held that a defendant's conduct must be a but-for cause of the victim's losses for a court to order restitution. *Id.* at 966. Followed by *Anthony II*, 22 F.4th 943, 950 (10th Cir. 2022).

In *Anthony II*, the district court rejected an unsubstantiated report by a government expert, Dr. C. David Missar, a clinical psychologist, seeking to establish a need for lifetime care for therapy to address trauma caused by the abuse suffered at the hands of the defendant. The Tenth Circuit stated:

> To meet its burden, the Government must establish "that the defendant's conduct has directly and proximately caused" the losses for which the Government seeks restitution. *Id.* at 966. To prove direct causation, it must

4

> show that, but for the defendant's conduct, the victim
> would not have suffered those losses. But-for causation "is
> established whenever a particular outcome would not
> have happened 'but for' the purported cause." *Bostock v.
> Clayton Cty*, —— U.S. ——, 140 S. Ct. 1731, 1739, 207
> L.Ed.2d 218 (2020). "In other words, a but-for test directs
> us to change one thing at a time and see if the outcome
> changes. If it does, we have found a but-for cause." *Id.* "[A]
> defendant cannot avoid liability just by citing some other
> factor that contributed to" the harm. *Id.*

*Anthony II*, 22 F.4th 943, 950 (10th Cir. 2022).

In *Anthony II*, the Government sought $853,000 in restitution to cover R.W.'s treatment costs, including a lifetime of therapy and medication. In the district court and on appeal, the government relied on Dr. Missar's report and argued the report establishes that but for Mr. Anthony's offenses, R.W. would not have suffered these losses. The Tenth Circuit disagreed. It held the report failed to show how much of the treatment costs should be attributed to Mr. Anthony.  It stated that at most, Dr. Missar's report proved that Mr. Anthony's offenses were sufficient causes for some of R.W.'s losses. In recommending restitution for a lifetime of therapy and medication costs, Dr. Missar did not even attempt to disaggregate the harms Mr. Anthony caused from the other harms R.W. suffered.  Instead, he opined that R.W. "will require specific therapy to address the trauma that she suffered during the abuse she endured by Mr. Anthony."  *Anthony II*, 22 F.4th at 951.

As in *Anthony II*, the reports and bills for treatment and the opinions about MW#1's need for lifetime treatment do not disaggregate the harms caused by Mr. Everman.  The requests do not indicate what treatment or amounts are medically

5

necessary or reasonable or are treatments that are reasonably projected to be incurred in the future. In this case, the government does not even offer an attempt at a comprehensive report like the one rejected in *Anthony II*.

The only medical report offered by the government is from Kailey Van Epps, an occupational therapist for Big Stone Therapies in Appleton, Minnesota. Ms. Epps does not indicate a need for a lifetime of treatment. To the contrary, she states that she foresees continuing to treat MW#1 until January 1, 2024.

Mr. Everman does not intend to shirk his obligation in this case. He recognizes that MW#1 deserves and requires treatment and that there will be costs associated with the treatment. He just does not want to agree to give the government a carte blanche amount that is not established as required by the statute.

**Determining an Amount for the Defendant's Relative Role.**

In determining a restitution amount for child pornography possession under the statute requiring an award of restitution for federal trafficking offenses, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses. *Paroline v. U.S.*, 572 U.S. 434, 134 S.Ct. 1710 (2014).

The Tenth Circuit has held that a restitution award must be consistent with the Supreme Court's decision in *Paroline*. In *United States v. Dunn*, 777 F.3d 1171, 1179 (10th Cir. 2015), the government agreed with the defendant that in light of the Supreme Court's recent decision in *Paroline v. United States*, the Tenth Circuit should vacate the district court's order and remand for proceedings consistent with *Paroline*.

*Dunn* states:

> *Paroline* resolved a circuit split on the question of "what causal relationship must be established between the defendant's conduct and a victim's losses for purposes of determining the right to, and the amount of, restitution under § 2259." 134 S.Ct. at 1716. After holding that §2259 requires a showing of proximate cause, the Court turned its attention to what it considered "the primary problem"—what "causation in fact" standard to apply in these cases. *Id.* at 1722. In other words, because the statute requires a causal nexus between a particular defendant's conduct and the victim's losses, how should courts determine the amount of restitution owed by a single defendant—likely unknown to the victim in many, if not most, cases—to the victim, when that defendant is one of potentially thousands of individuals who has engaged in possession or distribution of the images. *Id.*

777 F.3d at 1179-80.

The Tenth Circuit continued:

> Because of the "somewhat atypical causal process underlying the losses" in the child pornography context, the Court rejected the "traditional way to prove that one event was a factual cause of another." *Id.* The Court instead embraced an "aggregate causation" theory, premised on the fact that one single cause may be neither sufficient nor necessary to bring about a certain result,

7

> yet still may be considered a cause in fact of that result. *Id.* at 1724–26. Borrowed from tort principles, this theory has limitations, especially when transplanted to the criminal context. *Id.* at 1724. Thus, while a single defendant who possessed or even trafficked in child pornography undoubtedly "plays a part in sustaining and aggravating this tragedy," *Id.* at 1726, the Court outright rejected the notion that any one such defendant should be held liable for "the conduct of thousands of geographically and temporally distant offenders acting independently, and with whom the defendant had no contact," *Id.* at 1725.

777 F.3d at 1180.

The Supreme Court acknowledged that setting a proper restitution award under this standard will involve both "discretion and estimation," 134 S.Ct. at 1729, and noted that a "precise mathematical inquiry" would be ill-suited for the time being. *Id.* at 1728. Rather, a district court "must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id.* at 1727–28. The Court cited a number of factors that district courts should consider as "rough guideposts" in "determining an amount that fits the offense." *Id.* at 1728. After determining the "amount of the victim's losses caused by the continuing traffic in the victim's images," a district court should consider, among other things: the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders

8

involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role. *Id.*

In this case, the co-defendant Strom was causing harm to MV#1 before Dillon Everman appeared on the scene. Mr. Everman did play a role in production of one or two of the images which he specifically requested. He also played a role in publishing most of the images provided to him by Strom which he downloaded to his MEGAnz account. That account was closed in late August 2021. There is no way of knowing if or how many times the file for MW#1 was accessed by third parties.

Mr. Everman is responsible for harm done to MW#1. He will pay his fair share of the cost of treating and caring for the victim. He asks the Court to consider that he did not initiate the abuse caused to MW#1. He is ashamed that he caused any harm. He does not contend that he played a minor role. He only asks the Court to differentiate between his conduct and the conduct of the defendant who was in close proximity to the victim.

Wherefore, the defendant respectfully requests that the Court require the government to meet its burden of proof when determining the amount of the losses suffered by MV#1 and award restitution against him only for the amounts that the government proves were and will be caused by the "defendant's conduct in light of the broader causal process that produced the victim's losses."

Respectfully submitted,

LAW OFFICE OF PAUL S. MCCAUSLAND
Omni Business Center
111 S. Whittier
Wichita, Kansas  67207-1045
Telephone:    (316) 689-4235
Facsimile:     (316) 689-4299
mccauslaw@gmail.com

By: s/ Paul S. McCausland
Paul S. McCausland, KS # 08878
Attorney for Dillon E. Everman

**CERTIFICATE OF SERVICE**

The undersigned counsel for defendant Dillon E. Everman hereby certifies that, on this 4th day of January 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

 s/ Paul S. McCausland
Paul S. McCausland, KS # 8878